**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**JOHN G. TURNER**                                                   **PLAINTIFF**

**V.**                                                              **NO: 3:20CV165-M-RP**

**CONCOURS MOLD ALABAMA, INC.,**                                    **DEFENDANTS**
**and MARK ROCKS**

## MEMORANDUM OPINION

This cause comes before the Court on Defendants Concours Mold Alabama, Inc. ("Concours") and Mark Rocks' Motion for Summary Judgment [67]. Plaintiff John G. Turner has responded in opposition to this motion, and the Court having considered the memoranda and submissions of the parties is prepared to rule.

### Factual and Procedural Background

Concours hired John G. Turner in February 2017 as a business development manager, and Turner worked from his home in New Albany, Mississippi. Concours is a subsidiary of Concours Mold, Inc. which had locations in Cullman, Alabama, Canada, and Mexico at the time of Turner's termination. Concours designs, manufactures, and services plastic injection molds. Turner was hired as a business development manager to bring in sales related to repairs and engineering changes as opposed to sales related to new builds. Beginning in June 2017, Rocks became the general manager of the Cullman, Alabama plant. During Turner's employment Ed Ergun became the director of corporate sales, located at the Canada plant. Turner reported to both Rocks and Ergun during his employment. Andy Aiton was the president of Concours Technologies, which is the parent company of Concours, and was involved in both the decision to hire and terminate Turner.

1

Once Rocks became general manager, he reassigned some accounts that he was managing himself to other sales employees, including Turner. Also, during Turner's employment, some of Turner's accounts were reassigned to other employees. Soon after Turner was hired in 2017, the then general manager, Ross Mitton, completed a performance evaluation of Turner, giving a rating of "Exceeds Expectations" in 5 out of 10 categories and "Meets Expectations" in 5 out of 10 categories. In 2018, Rocks prepared a performance evaluation of Turner giving a rating of "Exceeds Expectations" in 1 out of 7 categories, a rating of "Meets Expectations" in 4 out of 7 categories, and a rating of "Improvement Needed" in 2 out of 7 categories. Rocks noted on the performance evaluation that Turner's sales goals were not being met. Turner agrees that he was told by Rocks that he needed to obtain additional sales for the Cullman, Alabama plant. In 2019 Rocks completed another performance evaluation in which Turner received a rating of "Meets Expectations" in 7 out of 7 categories. Rocks noted on the performance evaluation that Turner had begun to develop relationships with customers but still needed improvement to ensure no opportunities were lost, and Rocks later testified that he felt Turner was making improvements from the previous year.

As mentioned, some of Turner's accounts were reassigned from him to younger employees. The "Nascote account" in Nashville, Illinois was reassigned from Turner and given to Colin Jones in Canada. The "Aisin account" was reassigned from Turner and given to Colin Jones. Turner's "Kasai account" was reassigned to Sara Arif. The "US Farathane account" was reassigned to Ren Pelle. Each of these salespersons are younger than Turner.

During Turner's employment, Rocks never recommended a raise for Turner. In August of 2019, Andy Aiton, the company's president, asked management to make employee termination recommendations. Both Rocks and Ergun recommended that Turner be terminated from his

position.  On August 30, 2019, Turner, age 61, was notified by human resources that he was terminated due to organizational restructuring.  On the same day Ergun emailed the other sales employees in Cullman, Alabama, and stated Turner had been terminated due to a reduction in force, and Turner was chosen strictly on his performance/numbers.  Shortly after Turner was terminated, three new employees were hired, and these employees are Danny Johnson, Shaun Cote, and Gregory James.

On September 23, 2019, Turner filed his EEOC charge claiming age discrimination, and on September 26, 2019, the EEOC notified Concours' HR manager of the charge.  On June 10, 2020, Turner filed a complaint against Concours and Mark Rocks, asserting claims of age discrimination, breach of contract, and malicious interference with employment. [1]

On August 20, 2021, Concours filed a Motion for Summary Judgment [67] seeking to dismiss the claims of malicious interference with employment, age discrimination, and breach of contract.

**Summary Judgment Standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  At the summary judgment stage, the Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)  Once the moving party shows there is no genuine dispute as to any material fact, the nonmoving party "must come forward with specific facts showing a

genuine factual issue for trial." *Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1075.

**Discussion**

### I.    Age Discrimination

Under the Age Discrimination in Employment Act ("ADEA"), "[i]t shall be unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff can demonstrate age discrimination in two ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of proof." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir.2004). A plaintiff relying on circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision. *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir.2006). If a plaintiff produces direct evidence of discrimination, no further showing is required, and the burden shifts to the employer. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121–22, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985).

### A.  PRIMA FACIE CASE

To establish a prima facie case of age discrimination based on circumstantial evidence, "a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone

outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Rachid*, 376 F.3d at 309 (citing *Palosota v. Haggar Clothing Co.*, 342 F.3d 569, 575–76 (5th Cir.2003)).

> If the plaintiff establishes a prima facie case,

> The defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination; or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic. If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.

*Rachid*, 376 F.3d at 312.

The Court will first determine if Turner has established a prima facie case of age discrimination. Turner satisfies the first three elements of his prima facie case. Turner was discharged from his position at Concours. Turner was qualified for this position as he has worked around thirty-eight (38) years in the plastics industry, and this qualification is undisputed. Turner was also sixty-one (61) years old at the time of his discharge, which is within the protected class. The fourth element, replaced by someone outside the protected class; replaced by a younger person, or otherwise terminated because of his age, is disputed between the parties.

After Turners' discharge, three new salespersons were hired, Danny Johnson (63), Shaun Cote (40), and Gregory James (37). Regarding Danny Johnson, Concours reported to the EEOC that a new salesperson was needed to replace Turner after his discharge. In Concours' position statement to the EEOC, it is stated that a replacement salesperson is needed because a competitor's assets were purchased in Canada, and support is needed for that location. The job listing for this position listed traveling to Cullman, Alabama multiple times per month as a requirement, which

is one of the locations Turner reported to. Shaun Cote and Gregory James were also hired in connection with the purchase of another company in Canada. Turner alleges that while Cote and James were not reported to the EEOC as replacements, they were also hired, along with Johnson, as replacement salespersons for Turner.

Turner argues that Concours was not entirely candid with the EEOC when reporting replacements hired for Turner's position, as James and Cote were not reported, even though they were salespersons like Johnson and hired even before Johnson was to support the new acquisition in Canada. Turner argues that salespersons at Concours are not restricted in their duties to their geographical location, as Turner and other salespersons had accounts across the country. However, the evidence provided by Concours seems to show that Cote and James were hired to work in and report to the Canadian branch of Concours.

Turner also alleges that he was otherwise terminated because of his age. Turner alleges that the other three salespersons who reported to the Cullman, Alabama, plant were treated better than him. The ages of these other salespersons were 40, 36, and 34, while Turner was 61. Turner argues that his own accounts have been given to the younger salespersons, he has brought in more new accounts than them, and that they have received raises while he has not. Turner also provides evidence that some of Turner's accounts were reassigned to younger salespersons while the younger salespersons did not have their accounts reassigned. Also, evidence is shown by Turner which seems to rebut the statement that Turner had the lowest amount of sales.

In short, Turner has sufficiently established a prima facie case of age discrimination based on circumstantial evidence that he was either replaced by someone younger or otherwise discharged because of his age.

## B. NON-DISCRIMINATORY REASON

If the plaintiff establishes a prima facie case, "the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff…" *Rachid*, 376 F.3d at 312. Concours argues that Turner was terminated for a legitimate, nondiscriminatory reason, which was the company was engaging in headcount reductions at all three locations. According to Concours, Turner's sales numbers were lagging, and Aiton asked for managers to make employee termination recommendations, based mostly on performance. Rocks and Ergun both recommended Turner be terminated.

## C. PRETEXT

"If the employer articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Moss v. BMC Software, Inc.,* 610 F.3d 917, 922 (5th Cir.2010) (quoting *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378079 (5th Cir. 2010)). "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (quoting *Laxton v. Gap Inc*., 333 F.3d 572, 578 (5th Cir. 2003)). Where a defendant asserts a reduction in force as its legitimate nondiscriminatory reason, a plaintiff:

> Can raise a genuine dispute as to pretext by proffering competent summary judgment evidence that (1) he was "clearly better qualified" than similarly-situated younger employees who were not terminated, (2) the reduction in force was a sham or a pretext for age discrimination, or (3) although the reduction in force was legitimate on its face, [it was] implemented ... in such a way that age was impermissibly used as a factor to determine which employees were terminated.

*Peterson v. Bell Helicopter Textron, Inc.*, 901 F.Supp.2d 846, 858 (N.D.Tex.2012) (citing *Nichols v. Loral Vought Sys. Corp.,* 81 F.3d 38, 42 (5th Cir.1996)).

7

To establish pretext, Turner must produce evidence demonstrating that being terminated based on his sales performance during a head count reduction was not the true reason for his termination. *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir. 1993). "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss v. BMC Software, Inc.,* 610 F.3d 917, 922 (5th Cir.2010). "An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton v. Gap Inc.*, 333 F.3d 572, 579 (5th Cir.2003).

Turner first argues that the three younger salespersons receiving raises is evidence of pretext since Turner never received a raise himself. Concours responds by stating that raises were discretionary based on overall job performance and the wages of that employee's peers. Turner was the highest paid salesperson managed from the Alabama location, and thus Concours, observing his performance, never provided a raise. Under these circumstances, the argument that a raise was never given to Turner is of little value to show pretext, as Turner was being paid more than younger salespersons being managed from the Alabama branch.

Regarding Turner's performance as a salesperson, Concours refers to his performance reviews which cover the years 2017 through part of 2019. Essentially, each performance review noted that Turner was not meeting sales targets. Not only was Turner instructed of this in the performance reviews, Ergun also communicated with Turner through email stating the sales numbers need to be increased.

Turner also argues that younger salespersons were consistently treated better in the workplace in the handling of their accounts. Turner managed multiple accounts that were reassigned to the younger salespersons at some point during his employment. Concours states that some of these accounts reassigned from Turner to younger salespersons were at the request of the

customer, but some other reassignments were done so based on Concours' judgment. However, Rocks cannot recall an account being reassigned from a salesperson, based in Alabama, younger than Turner. The fact that Turner had multiple accounts reassigned from him to younger salespersons and that Rocks cannot recall any younger salespersons having their accounts reassigned provide at least some evidence to the claim that younger salespersons were treated better than Turner.

Ergun has testified that the Nascote account was reassigned based on the customer's request. According to Ergun, Nascote suggested that it would be easier for them to deal with someone that they deal with on a day-to-day basis. This account existed before Turner was hired, and was not completely taken from Turner, as Ergun and Aiton decided that Colin Jones should handle the "new build" portion of the work while Turner handled the change and repair sales.

The Aisin account was reassigned from Turner also at the request of the customer, according to Ergun. Concours states that the customer requested to directly deal with the program manager since there were otherwise delays in communication. Colin Jones, the salesperson who received this account from Turner, also testified that he spent many weeks with this customer in Mexico, and the customer directly requested that Jones take over the account.

However, Concours argues that only some of the reassignments were done based on the customer's request. This leaves multiple reassignments where the reasoning behind the decision is in dispute, with Turner believing that it was part of the ongoing problem with younger salespersons being treated better and Concours claiming that the reassignments were done for legitimate reasons.

Turner also argues that shortly before his termination he was assured by the business Diversity Vuteq, that Turner would receive an account worth around $6,000,000 to $7,000,000 in

sales. Turner only offers his own testimony that he was promised to receive this business, and further, Turner speculates that he was fired so that the younger salespersons could receive this account instead of him. "Speculative inferences [are] insufficient to demonstrate the existence of a genuine issue of material fact." *Lee v. Kansas City S. Ry. Co*., F.3d 253, 258 (5th Cir. 2009).

The circumstances around Turner's termination, and the subsequent EEOC filings, are argued to be enough evidence to survive summary judgment. As Turner points out, "A court may infer pretext where a defendant has provided inconsistent or conflicting explanations for its conduct." *Nasti v. CIBA Specialty Chemicals Corp*., 492 F.3d 589, 594 (5th Cir. 2007). Turner was notified by human resources that his employment was terminated effective August 30, 2019, due to organizational restructuring. Also on August 30, 2019, Ergun notified the other salespersons and other employees at the Alabama branch that Turner was no longer with Concours. Ergun further stated that many cuts were going on at all three facilities and Turner was chosen strictly on his performance and numbers. Further, Ergun stated that Concours cannot afford to keep any employee not pulling their weight.

After reviewing the record and submissions of the parties, it is clear that Concours was going through a restructuring as 25 employees were terminated in total from all of Concours' locations. Concours Alabama was identified as a location that was lacking in both sales and sales forecasts.

To reiterate, Turner was notified by human resources that he was terminated due to organizational restructuring, but Ergun stated that Turner was terminated based on his performance and numbers. While the Court does not find these two explanations to be incredibly inconsistent or conflicting, the question still exists as to why two different reasons for termination were provided. Turner does provide more allegations which are inconsistent with Ergun's statement that

Turner was chosen strictly on performance and numbers. The documentation provided to the EEOC while responding to Turner's allegation of age discrimination appears to show that Turner's performance was well below any other Alabama based salesperson. However, when reviewing the complete sales information for 2019 provided by Concours, which was not provided to the EEOC, it becomes clear that through the end of August 2019, Turner did not have the lowest overall sales. While the Court is not stating that the information Concours provided to the EEOC is incorrect, the Court believes that the information was incomplete and without context so Turner would appear to have performed well below the other Alabama based salespersons.

Although Concours could have been more transparent with the EEOC in showing that Turner's sales were not as low as they appeared, Concours has stated that Turner was selected for termination based on sales performance, more specifically his sales performance regarding engineering changes and repairs. Turner had, by far, the lowest sales for engineering changes and repairs at Concours Alabama. While Concours was not entirely candid with the EEOC about total sales, Concours was attempting to illustrate that Turner's sales were lacking in that department. As stated earlier, Turner has testified that he was hired to bring in mold repair and engineering change jobs to Alabama. This does not change the fact that Turner was not the salesperson with the lowest performance as Concours attempted to show. By leaving out a portion of Turner's sales when reporting his figures for 2019, further evidence of pretext is shown since Ergun stated Turner was terminated strictly on his performance, when in reality Turner, at the time, did not have the lowest performance.

Turner also argues that an alleged statement by Rocks provides further evidence of pretext. Turner testified that he told Ergun that Rocks was mistreating him because of his age, and Rocks responded "well, Rocks was right about you." [67 Exhibit 1] Turner stated that he asked Ergun

what he meant by that statement, but no response was given. *Id.* "Remarks by a supervisor showing discriminatory animus may be utilized by a plaintiff to demonstrate pretext." *Goudeau v. National Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015).

However, for age-related comments to be direct evidence of age discrimination, they must be more than stray remarks. *E.E.O.C. v. Texas Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). To be more than just a stray remark, an age-related comment must be "direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee." *Id.* Clearly this remark does not rise above the level of a stray remark as during Turner's testimony the exact statements and context of this alleged statement cannot be stated with certainty. Even if this was the exact quote used by Rocks, it does not meet the standard of "direct and unambiguous" to rise above a stray remark.

"In a circumstantial case ... , in which the discriminatory remarks are just one ingredient in the overall evidentiary mix, we consider the remarks under a more flexible standard." *Goudeau*, 793 F.3d at 475 (citing *Russel v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)). "To be relevant evidence considered as part of a broader circumstantial case, the comments must show: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker." *Id.* at 75-76 (citing *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 236 (5th Cir. 2015).

The Court finds that this remark meets the less stringent standard set forth by the Fifth Circuit, and thus will be considered in the evidence. The response was given by Ergun, a supervisor, when Turner brought up his belief about mistreatment due to his age, and Turner has

provided evidence that Aiton, the ultimate decision maker for terminating Turner, relied on both Ergun's and Rocks' recommendation. This statement provides further evidence of pretext.

Turner also makes the argument that Johnson, age 63, was hired at least in part to defeat Turner's age discrimination claim since Johnson was older than Turner. To provide context, Turner filed his EEOC charge of age discrimination on September 23, 2019, and the charge was emailed to Concours on September 26, 2019. Tiffany Huson, Concours' HR manager, stated that she did not know about the EEOC charge until January 14, 2020, which was seven (7) days after Johnson had been hired to replace Turner. The EEOC activity log supports Concours' assertion that they did not know of the claim's existence until January 14, 2020. The Court finds Turner's argument that Concours had prior knowledge of Turner's EEOC charge and hired Johnson to help defeat an age discrimination claim to be speculative. Turner is speculating that Concours found out earlier about the EEOC charge, hired an older employee to help avoid the charge, and then later claimed on January 14, 2020, that it was the first time Concours became aware of the charge.

While Turner does not have the strongest case for age discrimination, when the evidence is taken as a whole, a genuine issue of material fact has been established as to whether Concours discriminated against Turner because of his age.

Concours argues that the same-actor inference should apply, which is an inference that arises when a plaintiff was terminated by the same person or persons who hired him and creates an assumption that age discrimination was not the motive behind the termination. *Spears v. Patterson UTI Drilling Co.*, 337 Fed.Appx 416, 421-22 (5th Cir. 2009). Concours argues that Aiton was the ultimate decisionmaker in both the hiring and firing of Turner, and the fact that multiple employees suggested that Turner be terminated does not change the fact that Aiton made the final decision. However, Turner claims that Concours is not entitled to this inference as the "cat's paw"

doctrine should apply, as the decision to terminate Turner was influenced by both Ergun and Rocks. "The discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the 'cat's paw,' for the subordinate employee's prejudice.'" *Laxton v. Gap Inc*, 333 F.3d 572, 584 (5th Cir. 2003) (quoting *Shager v. Upjohn, Co*., 913 F.2d 398, 405 (7th Cir. 1990). "If the employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). "To invoke the cat's paw analysis, [Turner] must submit evidence sufficient to establish two conditions: (1) that a co-worker exhibited discriminatory animus, and (2) that the same co-worker 'possessed leverage, or exerted influence, over the titular decision maker.'" *Roberson v. Alltel Information Services*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell*, 235 F.3d at 226). "…[T]he supervisor's act must be a [but for] cause of the ultimate employment action." *Zamora v. City of Houston*, 798 F.3d 326, 332 (5th Cir. 2015) (citing *Staub v. Proctor Hospital*, 562 U.S. 411, 131 S.Ct. 1186, 179 L.Ed.2d 144 (2011)).

Turner argues that the cat's paw doctrine imputes the Rocks and Ergun's discriminatory animus to Aiton because Aiton relied on Rocks and Ergun to make employee termination recommendations. As stated previously, Aiton has testified that he relied on both Rocks and Ergun to provide a recommendation of who to let go from the Alabama branch, and both Rocks and Ergun recommended that Turner be terminated.

Questions of fact remain as to whether Rocks and Ergun had sufficient leverage to influence Aiton's decision to terminate Turner. Therefore, question of fact remains as to whether Rocks' and Ergun's recommendation was the but-for cause of Turner's termination. Summary judgment is not appropriate for Turner's ADEA claim.

II.     **Breach of Contract**

Turner alleges in his complaint that Concours is liable to Turner for breach of contract. Turner alleges that the employment agreement entered into with Concours only allows termination "for cause" and none of the "for cause" reasons are present in this case. Concours argues that the contract, while not stating explicitly that an employee can be terminated without cause, does in fact allow for termination without cause, as established by the termination pay scale in the employment agreement. Concours' employment agreement states that under the "termination for cause" heading, employees may be terminated for cause without notice or payment. Concours' employment agreement also provides another section, "termination of agreement," which outlines the termination pay an employee will receive, depending on how long they were employed. When a contract interpretation question is raised on summary judgment, a material fact issue concerning the parties' intent precludes summary judgment "when there is a choice of reasonable interpretations of the contract." *Gonzalez v. Denning*, 394 F.3d 388, 392 (5th Cir. 2004) (quoting *Amoco Prod. Co. V. Texas Meridian Resources Explor. Inc*., 180 F.3d 664, 669 (5th Cir. 1999). The contract must be read as a whole, so that effect can be given to all of its clauses. *Facilities, Inc. v. Rogers-Usry Chevrolet, Inc*., 908 So.2d 107 (Miss. 2005) (citing *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 126 (Miss. 1992). The Court cannot consider the contractual section which permits termination for cause without pay and ignore the contractual section which provides for pay upon termination. When read together, the Court finds it clear that the contract, without stating explicitly, allows both for cause and without cause termination. Concours is therefore entitled to summary judgment as to Turner's breach of contract claim.

### III.     Malicious interference with employment

In plaintiff's complaint, it is alleged that defendant Mark Rocks is liable to Turner for malicious interference with employment, as he was responsible for Turner being terminated for personal reasons, without any legitimate business reason.  Plaintiff has since withdrawn his malicious interference with employment claim against Rocks.  Concours has asserted that since the only claim against Rocks has been withdrawn, he is due to be dismissed from this action as a named defendant.  Since Turner has withdrawn this claim, Concours is entitled to summary judgment as to this claim.

**Conclusion**

**ACCORDINGLY**, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [67] is **GRANTED IN PART and DENIED IN PART**.  As a result, no claims remain against defendant Mark Rocks, and as such he is **DISMISSED** as a party.

**SO ORDERED**, this 2nd day of November, 2021.


/s/ Michael P. Mills_____
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**

16